IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

GREENBRIER HOTEL CORPORATION, et al.,

    Plaintiffs,

v.

CARTER BANK & TRUST, et al.,

    Defendants.

Civil Action No. 5:23-cv-00731
Honorable Frank W. Volk, Judge

**MEMORANDUM IN SUPPORT OF DIRECTOR DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(2)
FOR LACK OF PERSONAL JURISDICTION**

Defendants Michael R. Bird, Kevin S. Bloomfield, Robert M. Bolton, Gregory W. Feldman, James W. Haskins, Phyllis Q. Karavatakis ("Karavatakis"), Jacob A. Lutz, III, E. Warren Mathews, Catharine L. Midkiff, Elizabeth Lester Walsh, Curtis E. Stephens, and Litz H. Van Dyke ("VanDyke") (collectively, the "Director Defendants"), by counsel and pursuant to Rules 12(b)(2) of the Federal Rules of Civil Procedure and Local Rule 7.1(a)(2), submit this Memorandum in support of their Motion to Dismiss Plaintiffs' Complaint for lack of personal jurisdiction.

### I. INTRODUCTION

On November 10, 2023, trying to stave off confession of judgment proceedings pending against them in the Circuit Court of the City of Martinsville, Virginia—then set for hearing on November 15, 2023—Plaintiffs filed a redacted Complaint [ECF No. 1] against Defendants Carter Bank & Trust, Carter Bankshares, Inc. (collectively "Carter Bank") and the Director Defendants (together Carter Bank and the Director Defendants are referred to as the "Defendants").[1] The

---

[1] Plaintiffs filed a highly unusual *ex parte* Motion to Provisionally Seal Portions of the Complaint Pending Court Review on November 14, 2023. Pursuant to an agreed upon briefing schedule, the

Complaint is a reprise of a 2021 complaint Plaintiffs filed against Defendants in this Court styled *Bellwood Corporation et al. v. Carter Bank & Trust, et al.*, 5:21-cv-00320 ("*Justice I*"). Many of the allegations in the instant action are copied and pasted from *Justice I*, and the causes of action in the current action are slimmed-down versions of those in *Justice I*.² *Id.* [*Justice I*, ECF No. 65]. In what has become a pattern, whenever Plaintiffs default on their loans from Carter Bank and face the inevitable consequences of their default, they frivolously sue Defendants (including with flimsy and vague allegations made "upon information and belief" against the Director Defendants) claiming that they were the victims of "economic duress," a laughable notion when it comes to James C. Justice, II, the Governor of West Virginia and one-time reputed billionaire.

Collectively, Plaintiffs owe Carter Bank hundreds of millions of dollars. Although Carter Bank has worked repeatedly and cooperatively with the Plaintiffs over the years in restructuring and/or extending various of the loans, early in 2021 Carter Bank advised the Plaintiffs that it would not renew or extend two loans due to mature by their own terms on June 1, 2021. Despite having agreed in multiple documents not to sue Carter Bank, the day before the two loans matured Plaintiffs filed their complaint in *Justice I*, making numerous conclusory allegations of bad faith, breach of fiduciary duty, and overreaching. In conjunction with the agreed dismissal of *Justice I*, with prejudice, the parties restructured the loans and renewed the loan relationship. In the two years since, Carter Bank has renewed the Plaintiffs' loans six (6) times, most recently in February of this year.

The gist of the new Complaint filed herein – as it was in *Justice I* – is that, beginning in

---

parties have fully briefed the Motion to Seal.

² *Justice I* was dismissed agreed with prejudice on September 8, 2021. Thus, to the extent Plaintiffs' current claims are related to or based upon those dismissed in *Justice I*, they are barred by the doctrines of *res judicata* and/or collateral estoppel.

2017, Carter Bank somehow induced the Plaintiffs into "technical" defaults. Carter Bank then sought to exercise its rights under the pertinent loan documents, forcing Plaintiffs to sign various loan documents with purportedly unfair provisions. As they did in *Justice I*, the Plaintiffs sue not only Carter Bank, but every member of its board of directors, with whom they have no privity. Plaintiffs allege no communication with the Director Defendants, with the exception of the two who are also members of management. Plaintiffs make absolutely no specific factual allegations against any of the Director Defendants, yet they irresponsibly accuse them of "aiding and abetting" a breach of fiduciary duty and tortiously interfering with a business expectancy – as well as sanctionably lumping them into Plaintiffs' claims under the Bank Holding Company Act.

What the Complaint does not allege is any fact tying any of the Director Defendants to West Virginia. Indeed, the Complaint is devoid of allegations that ten of the twelve Director Defendants took *any specific actions* – let alone actions in West Virginia that would support the exercise of personal jurisdiction over them. As to the remaining two Director Defendants, Plaintiffs claim only that they attended a meeting six years ago and then refused to respond to phone calls and emails. What the Complaint conveniently omits, however, is that the referenced meeting took place in Martinsville, Virginia – *not in West Virginia* – among residents of Virginia and the Justice Entities' Kentucky outside counsel. In fact, none of the Director Defendants has had any contact with or taken any action in West Virginia in connection with the allegations Plaintiffs make in the Complaint as supporting their claims against Carter Bank.

Based on the sparse allegations in the Complaint, coupled with the facts set forth in declarations provided by the Director Defendants, Plaintiffs cannot demonstrate that personal jurisdiction exists over the Director Defendants. As a threshold matter, none of the Director Defendants are domiciled in West Virginia and the Court therefore cannot exercise general

personal jurisdiction over them. In addition, however, because the Complaint fails to allege any action taken by any Director Defendant *in West Virginia* that gave rise to Plaintiffs' claims (and because no Defendant Director actually took any such action), binding Fourth Circuit case law precludes the exercise of personal jurisdiction over them. A member of a corporate board of directors that exercises director-level management over a company does not become *individually* subject to personal jurisdiction for each action that the *company* takes in a foreign jurisdiction. The fact (assuming it to be true) that Carter Bank's board of directors, *acting in Virginia*, approved high-level decisions impacting loans made to Plaintiffs in Virginia and West Virginia does not make those decisions individual actions of the Director Defendants *in West Virginia.* In short, the Director Defendants do not have sufficient "minimum contacts" with West Virginia such that the exercise of personal jurisdiction would comport with Constitutional due process. Accordingly, the Complaint should be dismissed as to the Director Defendants.

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A. The Parties**

Defendant Carter Bank is a banking institution incorporated in the Commonwealth of Virginia, with its principal place of business in Martinsville, Virginia. Compl. ¶32; Declaration of Litz Van Dyke ("Van Dyke Decl.") ¶3, attached as **Exhibit 1**. The Director Defendants allegedly serve as directors of Carter Bank. Their places of residence are not alleged in the Complaint. Compl. ¶39. However, of the twelve (12) directors, seven (7) of them reside in the Western District of Virginia. *See* Van Dyke Decl., ¶1, Declaration of Phyllis Q. Karavatakis ("Karavatakis Decl.") ¶1, attached as **Exhibit 2**, Declarations of Defendants Kevin S. Bloomfield, Gregory W. Feldmann, James W. Haskins, E. Warren Matthews, and Elizabeth Lester Walsh attached hereto as **Exhibits 3-7**. Two of the directors reside in the Eastern District of Virginia,

near Richmond, Virginia. Declarations of Curtis E. Stephens and Jacob A. Lutz, III, attached hereto as **Exhibits 8 and 9**, ¶ 1. The remaining Director Defendants reside in North Carolina, South Carolina, and New York. Declaration of Michael R. Bird, attached as **Exhibit 10**, ¶ 1; Declaration of Robert M. Bolton, attached as **Exhibit 11**, ¶1; Declaration of Catherine L. Midkiff, attached as **Exhibit 12**, ¶ 1 (collectively, Exhibits 3-12 are referred to as the "Director Decls."). None of the Director Defendants are domiciled in West Virginia.

Plaintiffs James C. Justice II ("Jim Justice") and Cathy L. Justice are residents of West Virginia. Compl. ¶¶32-33. Plaintiff James C. Justice III ("Jay Justice") is a resident of the Commonwealth of Virginia.[3] Compl. ¶ 34. Plaintiffs Greenbrier Hotel Corp., Greenbrier Golf and Tennis Club Corp., Greenbrier Medical Institute, LLC, The Greenbrier Sporting Club Development Company Inc., The Greenbrier Sporting Club, Inc., Justice Family Group, LLC, and Oakhurst Club, LLC have their principal places of business in White Sulphur Springs, West Virginia. Compl. ¶¶22, 24-28, 31, 43. Plaintiffs Bellwood Corp. and Wilcox Industries, Inc. are West Virginia corporations, with their principal places of business in West Virginia. Compl. ¶¶ 20, 30. Plaintiff Players Club, LLC is a Delaware limited liability company. Compl. ¶ 23. Plaintiffs James C. Justice Companies, Inc. and TAMS Management, Inc., have their headquarters in Roanoke, Virginia. Compl. ¶¶ 18, 21. Plaintiff Twin Firs Estates, LLC is a Virginia limited liability company with its principal place of business in Virginia. Compl. ¶ 19.

---

[3] Plaintiffs Jim Justice, Cathy L. Justice and James C. Justice are referred to herein as "the Justices." The entity Plaintiffs are referred to collectively as the "Justice Entities."

**B.    The Only Factual Allegations Against the Individual Defendants Involve Actions that Took Place in Virginia.[4]**

The Complaint makes no specific factual allegations against ten (10) of the twelve (12) Director Defendants beyond naming them as parties. The only "factual" allegation made against them is the repeated speculation that "upon information and belief"[5] they purportedly "approved and directed the conduct of Carter Bank." Compl. ¶¶ 39, 124, 129. In other words, to the extent the Complaint makes any factual allegation against the Director Defendants, they are alleged to have acted in their capacities as directors of Carter Bank, located in Martinsville, Virginia. None of these individual parties are alleged to be residents of or domiciled in West Virginia. In fact, as set forth above, none of them are.

Moreover, the only specific factual allegations involving Karavatakis and Van Dyke are that they 1) attended the September 7, 2017 meeting, and 2) confirmed to Jay Justice and counsel for the Justice Entities the agreement purportedly reached at the meeting. Compl. ¶¶ 60-61. Although the location of this meeting—requested by the Plaintiffs—is purposely not identified, in fact it took place in Martinsville, Virginia, where Carter Bank has its headquarters. Van Dyke Decl. ¶¶ 3, 6; Karavatakis Decl. ¶¶ 3, 6. As described in the Complaint, the meeting involved Jay Justice (a resident of Roanoke, Virginia), Van Dyke (a resident of Martinsville, Virginia), Karavatakis (a resident of Union Hall, Virginia), Carter Bank's attorney (located in Virginia), and attorneys for the Justice Entities (Steven Ball, who lives in Roanoke, and Paul Sullivan, a partner at a prominent Kentucky firm). Van Dyke Decl. ¶¶ 5-7; Karavatakis Decl. ¶¶ 5-7.

---

[4] For purposes of this motion, Defendants assume the truth of any well-pled factual allegations contained in the Complaint. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (personal jurisdiction challenge). Defendants deny Plaintiffs' factual allegations and deny any liability for the claims set forth in the Complaint.

[5] This is an oft-encountered dodge used by lawyers when they have no actual evidence to support their claims. It is unknown in the Federal Rules of Civil Procedure.

The Complaint alleges that the purpose of the meeting was to discuss a request made by Jay Justice for a $10 million loan from Carter Bank to bring "certain coal mining operations" back into production and seeking an extension of time to make a $1.9 million payment due on "coal loans associated with these entities." Compl. ¶ 60. Any alleged subsequent assurances from Van Dyke or Karavatakis would have been made from Martinsville, Virginia to Steven Ball, attorney for the Justice Entities, or Jay Justice, both of whom are located in Roanoke, Virginia. Van Dyke Decl. ¶¶ 6-7. Jay Justice was the primary point of contact for the Plaintiffs throughout the period from 2017 through 2023 that Carter Bank engaged in negotiations with the Plaintiffs. Van Dyke Decl. ¶ 7.

The remaining specific factual allegations against Van Dyke and Karavatakis detail only the Plaintiffs' attempts to contact them by placing phone calls to them in Martinsville, Virginia. Compl. ¶¶ 62, 71. The Complaint asserts that neither Van Dyke nor Karavatakis returned the phone calls. *Id.* Almost all the remaining allegations in the Complaint are made against either Carter Bank or "Defendants" generally without specifying which Defendant took the purported action. As just one example, the Complaint claims that "Defendants demanded and obtained three separate Forbearance Agreements" from the Justice Entities. Compl. ¶ 66. Only Defendant Carter Bank is a party to any of these agreements. *Id.* There is no allegation that either Van Dyke, Karavatakis, or any other Director Defendant took any specific action against the Plaintiffs in his or her *individual* capacity.

C.  **None of the Director Defendants Have Had Contacts with the State of West Virginia.**

None of the Director Defendants reached out to or contacted the Plaintiffs in West Virginia to solicit a loan or any other financial transaction or business from any of the Plaintiffs. Van Dyke Decl. ¶ 12; Karavatakis Decl. ¶ 12; Director Decls. ¶ 7. Nor has any Director Defendant, whether

7

as a representative of Carter Bank or otherwise, met with any of the Plaintiffs or their representatives in West Virginia to discuss any of the various restructurings or refinancing alleged in the Complaint as supporting Plaintiffs' claims. Van Dyke Decl. ¶ 11; Karavatakis Decl. ¶ 11; Director Decls. ¶ 6.  None of the Director Defendants own real property in West Virginia.  Van Dyke Decl. ¶ 14; Karavatakis Decl. ¶ 14; Director Decls. ¶ 9.

Aside from a couple of meetings with Jay Justice at the Roanoke corporate headquarters of the Virginia-based Justice Entities, all communications between either Van Dyke or Karavatakis and the Plaintiffs described in the Complaint were initiated by the Plaintiffs.  Van Dyke Decl. ¶ 13; Karavatakis Decl. ¶ 13.  Neither VanDyke nor Karavatakis have had any communication with the Plaintiffs since the filing of *Justice I*.  As noted above, neither Van Dyke nor Karavatakis ever reached out to the Plaintiffs in West Virginia, either individually or on behalf of Carter Bank.

### III.   LEGAL STANDARD

When a district court considers a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction based on the allegations in the complaint and supporting affidavits, without an evidentiary hearing, the party asserting jurisdiction bears the burden of establishing—by a preponderance of the evidence—a prima facie case of jurisdiction.  *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).  The Court may consider affidavits submitted by both parties, but it must resolve factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction.  *Universal Leather*, 773 F.3d at 560.  The Court then must determine whether the facts proffered by the party asserting jurisdiction make out a case of personal jurisdiction over the party challenging jurisdiction.  *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196-97 (4th Cir. 2018); *see,*

*e.g.*, *Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 632 (S.D.W. Va. 2020) (granting motion to dismiss because "the plaintiff fails to allege specific facts to establish personal jurisdiction by a preponderance of the evidence").

For the Court to assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute, and (2) the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary to go through the normal two-step process. *In re Celotex Corp.*, 124 F.3d 619, 627-28 (4th Cir. 1997) (West Virginia's long-arm statute, W. Va. Code § 56-3-33, extends jurisdiction to the full reach of due process). Instead, the "statutory inquiry necessarily merges with the Constitutional inquiry and the two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996). Accordingly, this Court must determine whether exercising personal jurisdiction over the Director Defendants is consistent with due process. *In re Celotex Corp.*, 124 F.3d at 628; *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for or are related to the suit. *Carefirst*, 334 F.3d at 397. If the defendants' contacts with the state are not connected to the suit, jurisdiction over the defendants must arise from the defendants' general, more persistent, but unrelated contacts with the state. *Id.* If, however, the defendants' contacts with the state form the basis for or relate to the actions giving rise to the suit, they may establish "specific jurisdiction." *Id.* Plaintiffs here cannot establish either form of

9

personal jurisdiction over the Director Defendants.

## IV. ARGUMENT

**A. The Complaint Does Not Allege Facts Sufficient to Support General Personal Jurisdiction Over the Director Defendants.**

General personal jurisdiction is considered "all purpose" jurisdiction as it "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014). General personal jurisdiction requires "continuous and systemic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *Perdue Foods LLC v. BRF S.A.,* 814 F.3d 185, 188 (4th Cir. 2016). For a "natural person," "[t]he 'paradigm forum' for the exercise of general jurisdiction … is the person's domicile." *Blankenship,* 451 F. Supp. 3d at 613 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). A person's domicile "is the state in which that person lives 'with intent to make it a fixed and permanent home.'" *Id.* (quoting *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.")).

Here, the Complaint fails to allege that the Director Defendants are domiciled in West Virginia or that any of them have had "continuous and systematic" contacts with West Virginia. *Blankenship*, 451 F. Supp. 3d at 622, 624, 625 (holding that the court lacked general jurisdiction over individual defendants because none of them was domiciled in West Virginia). In fact, none of them is domiciled in West Virginia. The Court therefore cannot exercise general personal jurisdiction over the Director Defendants.

**B. Plaintiffs' Own Allegations Demonstrate the Lack of Specific Personal Jurisdiction Over the Director Defendants.**

Because the Court lacks general personal jurisdiction over the Director Defendants, the

exercise of personal jurisdiction over them must be tied to the specific conduct alleged in the Complaint to give rise to the claims asserted against them. *Ford Motor Co. v. Mont. Eights Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021) (specific jurisdiction requires that the suit be connected to the defendant's contacts with the forum); *Carefirst*, 334 F.3d at 397 (specific jurisdiction involves an assessment of the contacts that form the basis for the suit); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (specific personal jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") In assessing the existence of personal jurisdiction, the Court applies a three-part test to determine: (1) the extent to which the Director Defendants have purposefully availed themselves of the privilege of conducting activities in West Virginia; (2) whether Plaintiffs' claims against the Director Defendants arise out of or are related to those activities; and, (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

In making this determination, the contacts of a company are not attributed to a corporate agent for jurisdictional purposes. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (employees' contacts are not to be judged according to employer's activities in the forum). Instead, "'[e]ach defendant's contacts with the forum State must be assessed individually.'" *Blankenship*, 453 F. Supp. 3d at 613 (quoting *Calder*, 465 U.S. at 790); *see Simkins Corp. v. Gourmet Resources Int'l, Inc.*, 601 F. Supp. 1338, 1343 (E.D. Pa. 1985) (the issue in a Rule 12(b)(2) motion is whether the director or officer himself has sufficient minimum forum contacts to independently satisfy constitutional requirements). Specific personal jurisdiction requires that the defendant have "purposefully established minimum contacts in the forum State" such "that [the defendant] should reasonably anticipate being hauled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S.

11

462, 474 (1985) (internal quotation marks and citations omitted). Jurisdiction is proper where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the state. *Id.* at 475-76; *Walden*, 571 U.S. at 284 ("[T]he defendant's suit-related conduct must create a substantial connection with the forum State.")

The Complaint is devoid of any allegations identifying grounds supporting the exercise of specific personal jurisdiction over the Director Defendants. The only claims that are asserted against the Director Defendants are the purported "aiding and abetting" of Carter Bank's alleged breach of fiduciary duty (Count Two) and tortious interference with business relations (Count Three).[6] Thus, the only possible applicable provisions of the West Virginia long-arm statute, given the assertion of tort claims against the Director Defendants and the absence of any allegation that any Director Defendant took any action *in* West Virginia, are W.Va. Code § 56-3-33 (a)(1) or (4).[7] As set forth herein, Plaintiffs cannot rely on these provisions of the long arm statute because the Complaint fails to allege that any Director Defendant had the requisite minimum contacts with West Virginia, let alone that any Director Defendant engaged in "a persistent course of conduct," "regularly does business," or has "transact[ed] any business" in West Virginia.

---

[6] The Bank Holding Company Act does not apply to natural persons and therefore does not provide any basis for imposing individual liability – or asserting personal jurisdiction over – directors of a bank. *See, e.g.*, *Bieber v. State Bank of Terry*, 928 F.2d 328 (9th Cir. 1991); *Tose v. First Pa. Bank*, 648 F.2d 879, 898 n.23 (3d Cir. 1981); *Nesglo, Inc. v. Chase Manhattan Bank, N.A.*, 506 F. Supp. 254 (D.P.R. 1980).

[7] W. Va. Code § 56-3-33(a)(1) permits the exercise of jurisdiction over a person who transacts business in West Virginia when the cause of action arises out of the transaction of that business. W. Va. Code § 56-3-33(a)(4) provides that a court may exercise jurisdiction over a person or a cause of action arising from causing tortious injury in West Virginia by an act or omission outside West Virginia, "if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in" West Virginia.

> 1. <u>The Complaint fails to allege any specific act *whatsoever* taken by Director Defendants other than Van Dyke and Karavatakis, let alone actions that would support the exercise of personal jurisdiction over them.</u>

The acts of a corporate officer or employee taken in his or her corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity. *Columbia Briargate Co. v. First Nat. Bank in Dallas*, 713 F.2d 1052, 1056 (4th Cir. 1983). When a claim against a corporate agent is based only on the fact that he or she is an officer or employee of the non-resident corporation, "under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally." *Id*. at 1064-65; *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 106 (3d Cir. 2004) ("jurisdiction over . . . [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction"); *Simkins*, 601 F. Supp. at 1344 (plaintiff must demonstrate other meaningful contacts with the forum apart from the contacts of the corporate entity). Put another way, to demonstrate personal jurisdiction Plaintiffs must sue the Director Defendants "for a tort committed ***by [them]*** in [their] corporate capacity ***in the forum state***." *Columbia Briargate Co.*, 713 F.2d at 1064 (emphasis added). Courts have described this standard as requiring that "agents themselves take part in the ***conduct in the forum State*** that gives rise to [or is connected to] a plaintiff's claim." *Perdue Farms, Inc. v. Hook*, No. CIV. A. 97-0037-H, 1997 WL 672025, at *5 n.1 (W.D. Va. Oct. 17, 1997) (emphasis added).

The foregoing case law paradigmatically describes the allegations (or lack thereof) against the Director Defendants herein. The claims against all but two of the Director Defendants rely on nothing more than the allegation that they are directors of Carter Bank. There are *no* specific factual allegations in the Complaint regarding actions the Director Defendants took in West Virginia (or anywhere else for that matter) or any other contacts with West Virginia that could

13

permit the Court to conclude that the Director Defendants purposefully availed themselves of the privilege of conducting activities in West Virginia. Likewise, the claims against the Director Defendants—alleging violation of the Bank Holding Company Act, aiding and abetting a breach breach of fiduciary duty, and tortiously interfering with business relations—include absolutely no specific factual allegations and appear premised solely on the Director Defendants' alleged status as directors of Carter Bank. Indeed, the only allegation against the Director Defendants is the speculative assertion that "upon information and belief" the Director Defendants "knew of, approved, and directed Carter Bank's misconduct." Compl. ¶¶ 39, 124, 129.

That single allegation simply is insufficient to demonstrate the required minimum contacts with West Virginia that would permit this Court to exercise personal jurisdiction over them. The Director Defendants' approval or oversight *in Virginia* of Carter Bank's actions are not individual actions taken within *West Virginia*. *See Murphy v. Davis*, No. 1:20-CV-11, 2020 WL 9072851, at *4–5 (N.D.W. Va. Sept. 10, 2020), R&R adopted, No. 1:20-CV-11, 2021 WL 1232672 (N.D.W. Va. Mar. 31, 2021) ("Plaintiff has not made any showing of contact between Defendant *individually* and the State of West Virginia. . . . Defendant's title as Chief Compliance Officer and general use of the United States Postal Service, without more information, are insufficient to establish personal jurisdiction.") (emphasis added); *Henderson v. Metlife Bank*, N.A., No. 3:11-CV-20, 2011 WL 1897427, at *10 (N.D.W. Va. May 18, 2011) (finding that the plaintiff failed to establish minimum contacts for personal jurisdiction when an injury in West Virginia was not accompanied by a corporate agent's contacts with West Virginia); *Progressive Mins. LLC v. Rashid*, No. CIVA 5:07CV108, 2008 WL 4416408, at *6 (N.D.W. Va. Sept. 24, 2008) ("Progressive's argument that this Court has personal jurisdiction over Mr. Reynolds and Mr. Crosbie because they were directors of Global must fail unless Progressive proves by a

preponderance of the evidence that each defendant had individual minimum contacts with the state of West Virginia. Progressive has not met this burden. . . . Broad assumptions that Mr. Reynolds and Mr. Crosbie took part in the alleged scam because they either were, or allowed their names to appear as, directors of Global is not sufficient proof of minimum contacts that confers personal jurisdiction upon this Court.")

In fact, none of the Director Defendants have engaged in a "persistent course of conduct" in West Virginia or regularly transacted business there, let alone business related to the claims made by Plaintiffs in the Complaint. None of them lives in West Virginia, maintains property there, or works there. None of the Director Defendants reached out to or contacted the Plaintiffs in West Virginia to solicit a loan or any other financial transaction or business from any of the Plaintiffs. The Complaint's factual allegations do not even mention any Defendant Director by name other than Van Dyke (also Carter Bank's CEO), and Karavatakis (also Carter Bank's President). In fact, 10 of the 12 directors have not had *any communications* with the Plaintiffs or their representatives concerning the matters described in the Complaint, let alone reached out to them in West Virginia. Director Decls. ¶ 8. In short, Plaintiffs fail to allege *any* facts that would support the exercise of specific personal jurisdiction over 10 of the 12 Director Defendants consistent with the requirements of due process and West Virginia's long arm statute.

2. <u>The Complaint similarly fails to allege facts sufficient to demonstrate the existence of personal jurisdiction over Van Dyke and Karavatakis.</u>

The only non-boilerplate factual allegations in the Complaint referring to any action taken by any of the Director Defendants describe communications that took place at a meeting, which occurred in Martinsville, Virginia, attended by Van Dyke, Karavatakis, Jay Justice, counsel for the Justice Entities, and counsel for Carter Bank (all residents of Virginia), as well as the Justice Entities' Kentucky-based outside counsel. *See* Compl. ¶¶ 60; *see also* Van Dyke Decl. ¶ 5;

15

Karavatakis Decl. ¶ 5.[8]  As set forth above, the only other specific factual allegations in the Complaint concerning Van Dyke and Karavatkis are that they 1) initially agreed over the phone or by email to requests made by the Justice Entities, and then 2) refused to respond to phone calls and emails sent by Plaintiffs to them in Martinsville, Virginia. Compl. ¶¶ 61-62.  All communications, however, were initiated by the Plaintiffs.[9]  Van Dyke Decl. ¶ 8, Karavatakis Decl. ¶ 8.

These contacts, such as they are, are simply insufficient to demonstrate that Van Dyke and Karavatakis purposely availed themselves of the privilege of conducting business in West Virginia or had sufficient minimum contacts with West Virginia to make the exercise of jurisdiction over them constitutionally permissible.  As set forth herein, the only allegations in the Complaint against Van Dyke and Karavatakis are made against them in their capacities as directors of Carter Bank.  Likewise, the Complaint does not allege that either Van Dyke or Karavatakis took any action in furtherance of the alleged "aiding and abetting" or tortious interference – either in their individual or corporate capacities – *in West Virginia*.  The only meeting with the Plaintiffs alleged in the Complaint took place in Martinsville, Virginia.  As the Fourth Circuit has held,

> if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred *without* the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.

*Columbia Briargate*, 713 F.2d at 1064-65 (emphasis added).  Under this binding precedent, the

---

[8] None of the other Director Defendants attended this meeting. Director Decls. ¶ 5.

[9] Given that Jay Justice was the primary point of contact with the Justice Entities, most of these communications were initiated by him in Roanoke, Virginia and directed to Martinsville, Virginia. On a couple of occasions, Van Dyke and Karavatakis also met with Jay Justice at the Roanoke, Virginia corporate headquarters of the Virginia-based Plaintiffs to discuss the credit relationship between the parties. Van Dyke Decl. ¶ 10; Karavatakis Decl. ¶ 10.

16

Court cannot, consonant with principles of due process, exercise personal jurisdiction over Van Dyke and Karavatakis – who, like the other Director Defendants, did not take any action *in West Virginia* in connection with the alleged torts.[10]

The mere fact that some of *the Plaintiffs* either reside in or have their headquarters in West Virginia and purportedly suffered harm there is insufficient to support the exercise of personal jurisdiction over Van Dyke and Karavatakis. *See Far W. Capital v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) (merely alleging that an out of state defendant has committed a business tort that allegedly injured a forum resident does not establish that the defendant has the required minimum contacts with the forum); *see Walden*, 571 U.S. at 290 (the question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him [or her] to the forum in a meaningful way."); *Cape v. von Maur*, 932 F. Supp.124, 128 (D. Md. 1996) (mere fact that the plaintiff was a resident of Maryland, in light of the defendants' minimal contacts with the state, was insufficient to permit the exercise of personal jurisdiction).

Instead, as set forth above, the Court must examine the contacts created by the out of state defendant in committing the alleged tort. *Far W. Capital*, 46 F.3d at 1079-80. Here, to the extent it could be considered an action taken in furtherance of the alleged torts, the only meeting mentioned in the Complaint took place in Virginia. The attendees were all Virginia residents (with the exception of Kentucky counsel for the Justice Entities) and the negotiations concerned loans to Plaintiff entities, many of whom are located in Virginia. The documents all provide for the application of Virginia law and for the litigation of any disputes in the Western District of Virginia. And any phone calls or emails were directed *by Plaintiffs* to Van Dyke and Karavatakis *in Virginia*.

---

[10] To the extent Plaintiffs rely on the "transacting business" prong of the long-arm statute, there likewise is no allegation that Van Dyke and Karavatakis transacted business in West Virginia in their individual capacities, let alone that this suit is connected to any such business.

*See, e.g., Rosario v. Wands*, No. 1:09cv663, 2009 U.S. Dist. LEXIS 84992, at *12 (E.D. Va. Sept. 17, 2009) (mere telephonic and email communications in furtherance of a transaction are insufficient to form the basis for jurisdiction). Moreover, neither Van Dyke nor Karavatakis has had *any communication* with Plaintiffs since the filing of *Justice I*, Van Dyke Decl. ¶ 13; Karavatakis Decl. ¶ 13.

In short, there simply are no facts, alleged or not, demonstrating that the actions of Van Dyke and Karavatakis were "expressly aimed at" West Virginia or that they "purposely availed" themselves of the privilege of conducting activities in West Virginia that are related to the claims asserted against them. On the contrary, the focal point of the relationship between Carter Bank (and its directors) and Plaintiffs was in Virginia, where Carter Bank and many of the Plaintiffs are located, and where the relevant loan documents were drafted and negotiated – not West Virginia. *See Far W. Capital*, 49 F.3d at 1080 (finding no personal jurisdiction when the focal point of the relationship was Nevada, based on Nevada-centered agreements, not Utah). Because Plaintiffs cannot demonstrate the existence of sufficient "minimum contacts" between Van Dyke and Karavatakis and West Virginia, this Court cannot exercise personal jurisdiction over them.

## V. CONCLUSION

Because personal jurisdiction does not exist over any of the Director Defendants, the Director Defendants respectfully request that this Court grant their Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) and dismiss them from this case.

Dated: December 6, 2023                                Respectfully submitted,

                                                          /s/ R. Booth Goodwin II
                                          R. Booth Goodwin II (WVSB #7165)
                                          Goodwin & Goodwin, LLP
                                          300 Summers Street, Suite 500
                                          Charleston, West Virginia 25301
                                          Telephone: (304) 346-9700

        Facsimile: (304) 344-9692
        E-mail: rbg@goodwingoodwin.com

        John C. Lynch (WVSB # 6627)
        Megan E. Burns (WVSB #13290)
        Troutman Pepper Hamilton Sanders LLP
        222 Central Park Avenue, Suite 2000
        Virginia Beach, Virginia 23462
        Telephone: (757) 687-7564
        Facsimile: (757) 687-1524
        E-mail: john.lynch@trotuman.com
        Email: megan.burns@troutman.com

        *Counsel for Defendant Carter Bank & Trust*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

GREENBRIER HOTEL CORPORATION, et al.,

    Plaintiffs,

v.

    Civil Action No. 5:23-cv-00731
    Honorable Frank W. Volk, Judge

CARTER BANK & TRUST, et al.,

    Defendants.

## CERTIFICATE OF SERVICE

I, R. Booth Goodwin II, hereby certify that I served a true and correct copy of the foregoing **Memorandum in Support of Director Defendants' Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) For Lack of Personal Jurisdiction** upon the following counsel of record on December 6, 2023, via the Court's CM/ECF system.

Michael W. Carey
Steven R. Ruby
Raymond S. Franks
David R. Pogue
Carey, Douglas, Kessler, & Ruby, PLLC
707 Virginia Street, East
901 Chase Tower
Charleston, WV 25301
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

*Counsel for Plaintiffs*

    /s/ R. Booth Goodwin II
    R. Booth Goodwin II (WVSB # 7165)