IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

GREENBRIER HOTEL CORPORATION,
et al.,

        Plaintiffs,

v.                                              Case No. 5:23-cv-00731

CARTER BANK & TRUST, et al.,

        Defendants.

**MEMORANDUM IN SUPPORT OF CARTER BANK'S MOTION
TO TRANSFER VENUE TO THE WESTERN DISTRICT OF VIRGINIA**

Defendants Carter Bank & Trust and Carter Bankshares, Inc. (together "Carter Bank"), by counsel and pursuant to 28 U.S.C. § 1404(a), submits this Memorandum in Support of its Motion to Transfer Venue of this case to the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. § 1404(a).

### I.    INTRODUCTION

This civil action is a sequel to a case filed by mostly the same Plaintiffs against mostly the same Defendants in 2021 styled *Bellwood Corporation, et al. v. Carter Bank & Trust, et al.*, Civil Action No. 5:21-cv-00320 ("*Justice I*"). *Justice I* was dismissed agreed with prejudice on September 8, 2021. The Complaints in the two cases are remarkably similar. Some of the paragraphs have simply been copied and pasted from the first to the second case. The theories of liability are also similar. In what has become a pattern, whenever the Plaintiffs default on their loans with Defendant Carter Bank, they frivolously sue Defendants (including Carter Bank's entire board of directors, asserting flimsy conclusory allegations "upon information and belief") claiming

that they were the victims of "economic duress," a laughable notion given that James C. Justice, II, the Governor of West Virginia and one-time reputed billionaire (and his family) are and control the Plaintiffs.  In this case, Plaintiffs also continue the fantasy that Carter Bank owes them a "fiduciary duty."

Over the years, Carter Bank has extended hundreds of millions of dollars in loans to the collection of mining, hospitality, real estate, and farming businesses (collectively the "Justice Entities") operated by Plaintiffs James C. Justice, II and his son James C. Justice, III (together with Cathy L. Justice, "the "Justices"). Although Carter Bank has over the years worked repeatedly and cooperatively with the Justices and the Justice Entities in restructuring and/or extending various of loans, Carter Bank advised the Plaintiffs early in 2021 that it would not renew or extend two loans totaling approximately $57 million that were scheduled to mature on June 1, 2021.  Despite having agreed in numerous documents not to sue Carter Bank, the day before the two loans matured Plaintiffs filed a complaint in this Court making numerous conclusory allegations of bad faith, breach of fiduciary duty, overreaching, and stonewalling.  That action was dismissed agreed with prejudice on September 8, 2021. In connection with that dismissal, as evidenced by the Exhibits to the Motion that accompanies this Memorandum, the parties restructured and renewed the loan relationship.  As further evidenced by those Exhibits, over the following two years Carter Bank renewed and extended the loans six (6) times, most recently in February 2023.

The gist of this Complaint, as it was in *Justice I,* is that, commencing as far back as 2017, Carter Bank somehow induced the Plaintiffs into "technical" defaults and then sought to exercise its rights under the pertinent loan documents, "forcing" Plaintiffs to sign various loan documents with purportedly unfair provisions and generally engaging in a "scheme" to ensure the continued flow of payments from them. Plaintiffs sue in this Court, although none of the individual director

Defendants ("Director Defendants") are residents of West Virginia, Carter Bank is headquartered in Virginia, and the events that gave rise to the Plaintiffs' claims occurred in Virginia, not in West Virginia.

Notably, despite referencing the many loans Carter Bank extended to them and the documents evidencing them, Plaintiffs fail to attach even a single loan document to the Complaint. The reason for this failure becomes apparent upon a review of even a handful of the relevant documents, which uniformly contain forum selection clauses pursuant to which the Plaintiffs agreed to an exclusive forum in Virginia, not West Virginia. Between 2017 and 2023, including in connection with the settlement that the parties reached in 2021 which included the dismissal of *Justice I,* with prejudice, Plaintiffs have executed approximately ***two hundred and eighty five loan documents*** with forum selection clauses that mandate either the Circuit Court of the City of Martinsville, Virginia, or the United States District Court for the Western District of Virginia as the ***only*** forum to adjudicate any dispute arising from the lending relationship between the parties. In numerous documents, Plaintiffs consented to and waived any right to object to venue or jurisdiction in Virginia.[1]

Because the multitude of forum selection clauses are reasonable, were freely entered into by these Plaintiffs over several years, are not unfair, and do not contravene public policy, they are presumptively valid. Plaintiffs have no colorable argument that the forum selection clauses themselves, separate and apart from the agreements in which they appear, were the product of

---

[1] In addition to the loan documents, over a period extending from 2017 until the present, Plaintiffs executed ***nineteen (19)*** Release and Reaffirmation Agreements (the most recent of which was executed in February 2023) and ***three (3)*** Forbearance Agreements, all of which included forum selection clauses mandating either the Circuit Court of the City of Martinsville, Virginia or the United States District Court for the Western District of Virginia as the ***only*** forum to adjudicate any dispute arising from the lending relationship between the parties.

overreaching or duress. For one thing, Plaintiffs are highly sophisticated and experienced parties who were represented by sophisticated and experienced counsel during the negotiation of every one of the loan documents and release agreements. For another, it is not fundamentally unfair to require Plaintiffs to prosecute this litigation in their chosen forum, particularly given the fact that several of the Justice Entities, as well as Plaintiff James C. Justice, III ("Jay Justice") himself, are headquartered in and are citizens of the Western District of Virginia and all loan documents require the application of Virginia law.  The Court should enforce the numerous mandatory forum selection clauses in the loan documents and transfer this case to the United States District Court for the Western District of Virginia.

Because the Plaintiffs are parties to numerous agreements containing enforceable forum selection clauses, the Court should transfer the case to the agreed upon federal forum – the United States District Court for the Western District of Virginia. There are no "extraordinary circumstances" here that exempt this case from the usual rule that the parties' bargain controls. Indeed, the public interest factors – the only factors the Court should consider – also weigh in favor of transfer. This case involves a Virginia chartered bank as a Defendant and documents governed by Virginia law.  The supposed genesis of the parties' dispute began at a meeting held in the Western District of Virginia between residents of Virginia.  In short, the Court should find that the forum selection clauses control and transfer this case to the United States District Court for the Western District of Virginia.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Defendant Carter Bank is a banking institution incorporated in the Commonwealth of Virginia, with its principal place of business in Martinsville, Virginia. Compl. ¶ 35-36; Declaration of Litz Van Dyke ("Van Dyke Decl.") ¶ 4, **Exhibit A**.  The Director Defendants serve as directors

of Carter Bank. Their places of citizenship are not alleged in the Complaint but none of the Director Defendants is a citizen of or domiciled in West Virginia.[2]

Plaintiffs allege the following facts: Plaintiffs James C. Justice II ("Jim Justice") and Cathy L. Justice are citizens of West Virginia. Compl. ¶ 32-33. Plaintiff Jay Justice is a citizen of the Commonwealth of Virginia.[3] Compl. ¶ 34. Plaintiff Twin Fir Estates, LLC is a Virginia limited liability company with its principal place of business in Virginia. Compl. ¶ 19. Plaintiffs Greenbrier Hotel Corp., Players Club, LLC, Greenbrier Golf and Tennis Club Corporation, Greenbrier Medical Institute, LLC, The Greenbrier Sporting Club Development Company Inc., The Greenbrier Sporting Club, Inc., Justice Family Group, LLC, and Oakhurst Club, LLC are headquartered in and have their principal places of business in White Sulphur Springs, West Virginia. Compl. ¶¶ 22-28, 31. Plaintiffs Bellwood Corp. and Wilcox Industries, Inc. are a West Virginia corporation and a limited liability company with their principal places of business in West Virginia. Compl. ¶ 20, 30. Plaintiffs James C. Justice Companies, Inc., Justice Low Seam Mining, Inc., and Tams Management, Inc. have their headquarters in Virginia. Compl. ¶¶ 18, 21, 29. Thus, twelve of the Plaintiffs are West Virginia related and five are Virginia related.

## B. Allegations in the Complaint[4]

The Justice Entities and Carter Bank began a commercial lending relationship in 2001. Carter Bank, then headed by Worth Carter, a resident of Virginia, made various commercial loans

---

[2] Of the twelve (12) named directors, seven (7) of them reside in the Western District of Virginia. None of the Director Defendants are residents of West Virginia. *See* Mem. Supp. Rule 12(b)(2) Mot. to Dismiss.

[3] The entity Plaintiffs are referred to collectively as the "Justice Entities."

[4] For the purposes of this Motion and given the procedural posture of this case, the allegations in the Complaint must be accepted as true. However, Carter Bank strenuously denies the allegations in the Complaint and will substantively address them in due course.

5

to the Justice Entities. Compl. ¶¶ 49-50. By the end of 2016, Carter Bank had loaned over $775 million to the Justice Entities. Compl. ¶¶ 55. On April 7, 2017, Worth Carter passed away. Defendants Phyllis Q. Karavatakis ("Karavatakis") and Litz Van Dyke ("Van Dyke") "formally took over management of Carter Bank." Compl. ¶ 57.

Plaintiffs allege that Carter Bank thereafter breached an agreement to fund a real estate project. Compl. ¶ 59. On September 7, 2017, Plaintiff Jay Justice and attorneys for the Justice Entities met with Van Dyke, Karavatakis and Carter Bank's attorney. Compl. ¶ 60. Although the location of this meeting, requested by the Plaintiffs, is not identified, in fact it took place in Martinsville, Virginia where Carter Bank has its headquarters. Van Dyke Decl. ¶ 13. The Complaint alleges that Carter Bank induced the Justice Entities into technical default on their loans and on October 3, 2017 sent notices of default to the entities involved. Compl. ¶ 61-63. As a result of the default, Plaintiffs assert that they were "forced" to execute every security pledge, forbearance agreement, guarantee and release that Carter Bank demanded of them. Compl. ¶ 65. Plaintiffs then describe a four-year history from 2017 until 2021 of a scheme of allegedly tortious conduct by Carter Bank. Compl. ¶¶ 66-78.

On Memorial Day, May 31, 2021, the day before the June 1, 2021 maturity date of two of their loans, Plaintiffs were "forced to sue" the Defendants in this Court (*Justice I*). The parties settled *Justice I*. Compl. ¶ 79. As the Exhibits demonstrate, as part of the settlement all the Plaintiffs signed new loan documents, released the Defendants, agreed not to sue the Defendants, and affirmed the enforceability of the loan documents governing the parties' relationship. This Court entered an agreed Dismissal Order on September 8, 2021, dismissing the case with prejudice.

Plaintiffs claim that thereafter Carter Bank's "unlawful and tortious behavior not only continued unabated but in fact worsened." Compl. ¶ 79. The balance of the factual allegations,

Compl. ¶ 80-99, is essentially redacted and cannot be addressed herein until the Court rules on the pending Motion to Seal. Suffice it to say that events led to Carter Bank obtaining confessed judgments against the Plaintiffs in the Circuit Court for the City of Martinsville, Virginia, with a hearing to set them aside scheduled for November 15, 2023. Plaintiffs filed the Complaint herein on November 10, 2023.

C. **Hundreds of Loan Documents and Release and Reaffirmation Agreements Executed by Plaintiffs Over a Six-Year Period Include Forum Selection Clauses Mandating the Western District of Virginia as the Proper Forum for the Resolution of Disputes.**

Beginning approximately seven (7) years ago, Carter Bank began to seek to reduce its credit exposure to the Justice Entities and repeatedly informed the Justice Entities of its desire to do so. Van Dyke Decl. ¶ 8. During the ensuing years, contrary to the allegations in the Complaint, Carter Bank worked cooperatively with the Justice Entities to restructure and/or extend various of the loans made to the Justice Entities, as well as occasionally advance new credit. Van Dyke Decl. ¶ 9. As one would expect, in connection with these new loans, restructurings, and extensions of existing loans, the Justice Entities executed various loan agreements, promissory notes, guaranties, modifications to deeds of trust, security agreements, subordination agreements and other loan documents. Van Dyke Decl. ¶10 & Ex. 1. The Justices also repeatedly executed personal guaranties. *Id*. The loan documents and guaranties described herein are collectively referred to as the "Loan Documents." Virtually all the Loan Documents contain forum selection clauses. In total, during the period from 2017-2023, both before and after *Justice I*, as well as in connection with the settlement of *Justice I*, **the Plaintiffs executed approximately two hundred and eighty five (285) separate Loan Documents containing forum selection clauses** providing that the exclusive venue for any dispute would lie in Virginia, usually either in the Circuit Court of the City of Martinsville, or in the United States District Court for the Western District of Virginia. Several documents containing such clauses were executed even before the September/October

7

2017 events that are alleged to provide the initial basis for Plaintiffs' claims. Van Dyke Decl. <u>Ex 1.B.</u>

As set forth above, in the Fall of 2017, certain of the Justice Entities defaulted on loans made to them by Carter Bank.  As a result of the default, the parties engaged in negotiations that resulted in the execution of a forbearance agreement, which subsequently was amended and restated twice in the immediately ensuing months (collectively the "Forbearance Agreements") and pursuant to which Carter Bank agreed to forebear from exercising its rights under certain of the then-operative Loan Documents. Van Dyke Decl. ¶ 14 & <u>Ex. 1.C</u>. Each Forbearance Agreement contained a forum selection clause designating the United States District Court for the Western District of Virginia or the Circuit Court of the City of Martinsville, Virginia as the exclusive forum to litigate any dispute between the parties.  During the negotiations leading to the various Justice Entities' execution of the Forbearance Agreements, as well as the associated Loan Documents, the Plaintiffs were represented by both their Virginia-based in-house counsel, Stephen W. Ball, Esq. ("Ball") and their well-respected senior outside counsel, Paul E. Sullivan, Esq. ("Sullivan") of the law firm, Frost, Brown & Todd, LLC.  Mr. Sullivan's curriculum vitae is impressive.  Van Dyke Decl. ¶ 15. The Justices and the Justice Entities were well represented by sophisticated counsel at the time that the Forbearance Agreements were executed.

In addition to the Loan Documents and the Forbearance Agreements, beginning in May 2017 (before any of the actions alleged in the Complaint to support Plaintiffs' claims had occurred) and continuing through February of this year, the Plaintiffs executed **nineteen (19) Release and Reaffirmation Agreements (a) reaffirming the legality, validity and binding nature of the respective terms of their loan obligations to Carter Bank, (b) covenanting not to participate in any lawsuit or take any position adverse to Carter Bank relating to the Loan Documents**

**and (c) unconditionally releasing Carter Bank from any and all claims they might have against Carter Bank** (collectively the "Release and Reaffirmation Agreements.") Van Dyke Decl. ¶ 39 & Ex. 1.U.  Each of the Forbearance Agreements contained similar releases by incorporation. Van Dyke Decl. ¶ 14 Ex. 1.C.  Throughout the relevant time, Plaintiffs have been represented by highly sophisticated and experienced legal counsel.[5]

Most pertinent here, each of the nineteen Release and Reaffirmation Agreements also contained a forum selection clause, again identifying the United States District Court for the Western District of Virginia or the Circuit Court of the City of Martinsville, Virginia as the venue in which to litigate any dispute arising out of the parties' lending relationship.  Thus, commencing in May 2017 and continuing through February 16, 2023, Plaintiffs repeatedly agreed that either the Western District of Virginia or the City of Martinsville were to be the exclusive venue for any legal action arising out of or relating to the Release and Reaffirmation Agreements or the Loan Documents.[6]  Van Dyke Decl. 39 Ex. 1.U.

---

[5] In *Justice I,* the Justices and Justice Entities were represented by H. Rodgin Cohen and Steven R. Ruby.  Mr. Cohen is senior chair and former chairman of the New York City law firm of Sullivan and Cromwell, one of the premier law firms in the world.  The primary focus of Mr. Cohen's practice is representing financial institutions.  He is considered by many to be the pre-eminent banking lawyer in the United States. Since the dismissal of *Justice I*, the Justices have been represented by Mr. Ruby.  Mr. Ruby is a partner in the Charleston, WV law firm of Carey, Douglas, Kessler & Ruby PLLC. He is a former law clerk to Judge Robert B. King of the Fourth Circuit Court of Appeals, a former federal prosecutor, and a veteran of nationally noted cases.  Mr. Ruby maintains a practice that spans the entire gamut of civil litigation. The Defendants cannot claim that throughout the entire relevant time, they were not adequately represented in these matters by highly sophisticated and experienced legal counsel.  Van Dyke Decl. ¶ 30-32.

[6] The initial Release and Reaffirmation Agreement's language regarding forum selection arguably is not mandatory. The language in the remaining Release and Reaffirmation Agreements over the ensuing six year period regarding forum selection unquestionably is.

9

All the Loan Documents executed over the six-year period, as well as the Forbearance Agreements and Release and Reaffirmation Agreements, also provide that they are governed by Virginia law.[7] Thus, the numerous Loan Documents, Forbearance Agreements and Release and Reaffirmation Agreements uniformly include provisions by which the Plaintiffs agreed that any dispute between them and Carter Bank would be brought ***exclusively*** in the Circuit Court of the City of Martinsville, Virginia or the United States District Court for the Western District of Virginia.

As just one early example, the May 22, 2017 Loan Agreement, executed by Greenbrier Hotel Corporation, et al. before the complained of events of October, 2017, provided that "Any litigation arising out of any of the Loan Documents shall have as its venue the Circuit Court of the City of Martinsville, Virginia or the United States District Court for the Western District of Virginia." Van Dyke Decl., Ex. 1.B. Nothing could be clearer. Plaintiffs make no allegation regarding the unenforceability of this provision.

As another early example, the November 22, 2017 Forbearance Agreement provides:

> Each of the Justice Entities hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement or any of the Loans or Loan Documents shall be instituted exclusively in the Circuit Court of the City of Martinsville, Virginia, or the United States District Court for the Western District of Virginia, assuming such court has jurisdiction.  Each of the Justice Entities hereby consents to the jurisdiction of such courts and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which each of the undersigned may now or hereafter have in any such legal action or proceedings.

Van Dyke Decl., Ex. 1.C.

---

[7] Additionally, each promissory note and guaranty executed by the Plaintiffs contains a confession of judgment provision consenting to the confession of judgment in the Circuit Court of the City of Martinsville, Virginia. *See, e.g.*, Van Dyke Decl., Ex. 1 – notes and guaranties generally.  As noted above, in fact, Carter Bank has confessed judgment against the Justices in the Circuit Court of Martinsville, Virginia. Compl. ¶ 94

On June 30, 2020, the Plaintiffs, then represented by an equally sophisticated outside counsel, William A. Burck, Esq., a partner practicing with the national law firm of Quinn Emanuel Urquhart & Sullivan, LLP, who had replaced Mr. Sullivan as outside counsel to the Justices and the Justice Entities (Van Dyke Decl. ¶ 29), again agreed in numerous loan documents and a Release and Reaffirmation Agreement executed in connection therewith that the exclusive venue for any dispute would lie in the Circuit Court of the City of Martinsville or the United States District Court for the Western District of Virginia.  Van Dyke Decl. Ex. 1.M.

In connection with the settlement of *Justice I*, and thereafter in connection with six renewals of the loans that Plaintiffs had with Carter Bank, and as recently as February of this year, Plaintiffs again agreed in numerous loan documents, as well as six Release and Reaffirmation Agreements executed in connection with those loan documents, that the exclusive venue for any dispute would lie in the Circuit Court of the City of Martinsville or the United States District Court for the Western District of Virginia.  Van Dyke Decl. Ex. 1.N-U.

All told, **Plaintiffs signed almost three hundred (300) separate documents over a six-year period agreeing to venue in the United States District Court for the Western District of Virginia or the Circuit Court of the City of Martinsville**.

### III. ARGUMENT

The Court should enforce the numerous mandatory forum selection clauses and transfer this case to the United States District Court for the Western District of Virginia.[8] The proper procedural vehicle to enforce a forum selection clause is through a motion to transfer venue under the doctrine of *forum non conveniens*.  *Devil's Advocate, LLC v. Grynberg Petroleum Co.*, 588

---

[8] Simultaneously with the filing of this motion, the Director Defendants are filing a Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction. As advanced therein, the Court cannot exercise personal jurisdiction over the Director Defendants. They should be dismissed from this case if it is not transferred.

11

Fed. Appx. 264 (4th Cir. 2021) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 61 (2013)); *Tech. Revelations, Inc. v. Peraton, Inc.*, No. 7:21-cv-00518, 2022 U.S. Dist. LEXIS 178297, at *6 (W.D. Va. Sept. 30, 2022) (proper vehicle to enforce a forum selection clause is a motion to transfer under § 1404(a)). Under 28 U.S.C. § 1404(a), in the interest of justice or for the convenience of the parties and witnesses, the Court has the discretion to transfer this action to any other district or division where it originally could (or in this case should) have been brought. *Sauvageot v. State Farm Mut. Auto Ins.*, 2011 U.S. Dist. LEXIS 73446, *1 (N.D. W. Va. 2011). Here, because the parties have selected the United States District Court of the Western District of Virginia as the forum in which any dispute related to the Loan Documents must be litigated, the Court should transfer this case to that forum.

**A.     The Forum Selection Clauses in the Loan Documents, Forbearance Agreements, and Release and Reaffirmation Agreements are Valid and Enforceable.**

When analyzing a forum selection clause, district courts apply federal law. *Albemarle Corp. v. Astrazeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). Under the federal standard, a forum selection clause is presumptively valid and, absent a showing of unreasonableness under the circumstances, should be enforced. *Sauvageot*, 2011 U.S. Dist. LEXIS 73446, at *5. Forum selection clauses are unreasonable if: "(1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Id.* at *5-6. The party opposing the application of a forum selection clause "bears a heavy burden of proving unreasonableness." *Id.* at *6.[9]

---

[9] Virtually all the forum selection clauses included in the Loan Documents, Forbearance Agreements and Release and Reaffirmation Agreements are mandatory. They provide variously that venue "will" or "shall" be in the Circuit Court of the City of Martinsville or the United States

The forum selection clauses here unquestionably are reasonable.[10] Plaintiffs have no colorable argument that enforcement of the forum selection clauses will deprive them of their day in court because of grave inconvenience or unfairness. "It is the foreseeability of litigation in the selected forum — and not its explicit connection to the transaction — that is the relevant consideration." *Wilson Works, Inc. v. Matheson Tri-Gas, Inc.*, 2012 U.S. Dist. LEXIS 198004, *7-8 (N.D. W.Va. Oct. 10, 2012) (holding that Texas was not inconvenient when that forum was clearly foreseeable based on the plaintiff's agreement to litigate there). Not only was litigation in the Western District of Virginia foreseeable, based on the multitude of documents Plaintiffs signed but it is also not physically inconvenient. Two of the Justice Entities are headquartered in the Western District of Virginia. Plaintiff Jay Justice, who is one of the primary factual witnesses who dealt with Carter Bank throughout the years of negotiations, resides in the Western District of Virginia, as does Ball, another key witness and in-house counsel for the Justice Entities. Van Dyke Decl. ¶42, 23. The Western District of Virginia also is not "gravely" inconvenient to those Plaintiffs located in West Virginia. White Sulphur Springs (headquarters to most of the other Justice Entities) sits in close proximity to the Western District of Virginia.[11]

---

District Court for the Western District of Virginia. *See Manchin v. QS-1 Data Sys.*, 2013 U.S. Dist. LEXIS 114155, at *5-6 (N.D. W. Va. Aug. 12, 2013) (finding that the language "sole" and "shall" makes the forum selection clauses mandatory).

[10] As a threshold matter, application of Virginia law is not fundamentally unfair. Indeed, Plaintiffs repeatedly agreed that Virginia law governs the parties' relationship. The forum selection clauses do not contravene West Virginia public policy. *See Petroleum Prods. v. Commerce & Indus. Ins. Co.*, 2009 U.S. Dist. LEXIS 112896, at *12 (S.D. W.Va. Dec. 4, 2009) (citing *Gen. Elec. Co. v. Keyser*, 166 W. Va. 456, 275 S.E.2d 289, 292 (W. Va. 1981)).

[11] Roanoke, Virginia is an hour and thirty-minute drive from White Sulphur Springs, West Virginia. Directions for driving from White Sulphur Springs, WV to Roanoke VA, *Google Maps*. (Retrieved December 1, 2023 from https://tinyurl.com/3v252yzc.) Beckley is a fifty-nine-minute drive from White Sulphur Springs, West Virginia. Directions for driving from White Sulphur Springs, WV to Beckley, WV. *Id.* (Retrieved December 1, 2023 from https://tinyurl.com/57vkjfmu.)

Based on the allegations in the Complaint, Defendants anticipate that Plaintiffs will argue that the forum selection clauses were the result of "overreaching" in their formation. *See, e.g.,* Compl. ¶ 65 (vaguely asserting Plaintiffs were under "severe duress"); ¶¶ 79-81 (contending that the Release and Reaffirmation Agreements are "unconscionable" and "unsupported by fair and adequate consideration" and they were "forced" to execute loan agreements.) Economic duress, however, is not a contract defense under Virginia law when the contracting parties are fully informed. *Freedlander, Inc., The Mortg. People v. NCNB Nat'l Bank of N.C.*, 706 F. Supp. 1211, 1212 (E.D. Va. 1988) ("Economic duress is 'not readily accepted as an excuse' to bar the enforcement of a contract under Virginia law.") (quoting *Seward v. Am. Hardware*, 161 Va. 610, 171 S.E. 650, 662 (1933)), *aff'd sub nom. Freedlander v. NCNB Nat'l Bank of N.C.*, 921 F.2d 272 (4th Cir. 1990). In Virginia, even "[a] contract reluctantly entered into by one badly in need of money without force or intimidation and with full knowledge of the facts is not a contract executed under duress." *Id.* at 1216. Plaintiffs do not allege that they were less than fully informed, nor can they, given their representation by sophisticated counsel. Virginia law will not allow the application of the economic duress theory here. *Cary v. Harris*, 120 Va. 252, 259, 91 S.E. 166 (1917) ("[A] contract of compromise, entered into with full knowledge of all the facts, cannot be set aside on the ground of duress when the other party has not been guilty of any unlawful act.").

Moreover, for a forum selection clause to be invalid for fraud or overreaching, "*the clause itself*, not the agreement" must be the product of overreaching. *Manchin*, 2013 U.S. Dist. LEXIS 114155, at *7 (internal quotations removed) (emphasis in original). This ensures that more generalized claims of fraud or unconscionability are litigated in the chosen forum, in accordance with the contractual expectations of the parties. *Id.* Plaintiffs here cannot claim that each of the

almost ***three-hundred*** forum selection clauses was obtained as the result of fraud, overreaching, or duress, separate and apart from the agreements in which they appear. Plaintiffs are highly sophisticated parties[12] who had full access to, and an opportunity to confer with, both in-house and prominent outside counsel before entering into any agreement with Carter Bank. The Complaint acknowledges this, admitting that attorneys for the Justice Entities were in communication with Carter Bank's attorneys as early as 2017. Compl. ¶¶ 60-61. Plaintiffs' attorneys were involved in negotiating all the documents. Van Dyke Decl. ¶¶ 15, 20, 29, 32, 40 With no claim of fraud, the Plaintiffs willingly signed almost three hundred (300) Loan Documents, Forbearance Agreements, and Release and Reaffirmation Agreements, all of which include forum selection clauses identifying Virginia as the proper venue. *See P.M. Enterprises v. Color Works*, 946 F. Supp. 435, 441 (S.D. W.Va. 1996) (forum selection clauses are prima facie valid and should be enforced when made in arms-length transactions by sophisticated businessmen). Some were executed in connection with a settlement of *Justice I*.

Finally, the Plaintiffs *agreed to the same clause*s in agreements predating the date Plaintiffs pinpoint as the beginning of Carter Bank's allegedly oppressive conduct. Plaintiffs were not under "duress" when they agreed once in January 2017 and twice in May 2017 to litigate all loan-related disputes in Virginia courts. *See* Van Dyke Decl., Exs. 1.A, 1.B, 1.N. These prior agreements demonstrate that a Virginia forum selection clause was a standard part of the parties' loan agreements, mutually convenient and agreed upon. Plaintiffs cannot show that the parties' continued and repeated use of substantially the same forum selection clauses in post-May 2017 loan agreements was in any way indicative of duress or fraud.

---

[12] By their own admission, the Justices have been operating a vast network of businesses for more than 50 years. Compl. ¶ 10.

In short, Plaintiffs cannot demonstrate that the governing forum selection clauses are unreasonable. The forum selection clauses are mandatory, applicable, and enforceable. *Manchin*, 2013 U.S. Dist. LEXIS 114155, at *13. Accordingly, the Court should transfer this case to the Western District of Virginia.

**B.      The Relevant Public Interest Factors Under 28 U.S.C. 1404(a) Favor Transfer to the Western District of Virginia.**

In deciding a motion to transfer venue under § 1404(a), the court ordinarily must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). Specifically, the district court considers the following factors:

> (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

*P.M. Enterprises v. Color Works*, 946 F. Supp. 435, 440 (S.D. W.Va. 1996). This analysis differs, however, when the parties have agreed to a contract with a valid mandatory forum selection clause, which "'represents the parties' agreement as to the most proper forum.'" *Justice Holdings, LLC v. Cooper Land Dev., Inc.*, 2021 U.S. Dist. LEXIS 215911, at *7 (S.D. W.Va. Nov. 9, 2021) (quoting *Atl. Marine Const. Co.*, 571 U.S. at 63).

First, as this Court has held, the Plaintiffs' choice of venue bears no weight. *Id.*, at *8. "Instead, 'the plaintiff bears the burden of establishing that the transfer to the forum for which the parties bargained is unwarranted.'" *Id.* (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 6). Second, "the Court should not consider arguments about the parties' private interests." *Id.* (internal quotations omitted). And third, only the public interest factors should be considered by the Court because they are "the only factors that may weigh against transfer." *Id.*, at *9. Given that the public interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection

16

clauses should control except in unusual cases." *Id.* (internal quotations removed). This is not an unusual case.

The public interest factors the Court considers include "consideration of administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest of 'having the trial of a diversity case in a forum that is at home with the state law that must govern the case'; the avoidance of unnecessary problems in conflict of laws; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Petroleum Prods.*, 2009 U.S. Dist. LEXIS 112896, at *23 (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Justice Holdings, Inc.*, 2021 U.S. Dist. LEXIS 215911, at *9. Here, the interests of justice require a transfer of venue to the United States District Court for the Western District of Virginia.

In this case, the controversy is centered in the Western District of Virginia, where Carter Bank is located. Plaintiffs cannot dispute that they are located *both* in the Western District of Virginia and in West Virginia (with Jay Justice, one of the prime protagonists living in Roanoke, Virginia), that Defendants are primarily located in the Western District of Virginia (with none of them in West Virginia), that each promissory note provides for confession of judgment in Martinsville, Virginia (and indeed that Carter Bank has already confessed judgment in Martinsville), that Virginia law will control, that the meeting (the only meeting between the parties) that was the supposed genesis of this dispute occurred in Virginia and that the written proof regarding the case is located in the Western District of Virginia. This case simply does not involve a controversy localized in West Virginia, despite the political notoriety of Jim Justice. Also, Virginia is not an "unrelated forum" since the Loan Documents, Forbearance Agreements and Release and Reaffirmation Agreements *all* specify that they and any dispute arising from them are governed by Virginia law. Thus, the United States District Court for the District Court for the

17

Western District of Virginia is surely "at home with the state law that must govern" resolution of the case. In short, there is no "exceptional public policy factor that counterbalances, much less outweighs the forum selection clause[s]." *Justice Holdings, Inc.*, 2021 U.S. Dist. LEXIS 215911, at *11. Accordingly, "the interest of justice is served by holding the parties to their bargain." *Id.* (internal quotations removed).

Surely, the Defendants will cite the political notoriety of one of the many Plaintiffs and the fact that some of the collateral of the loans at issue is prominent West Virginia real estate. But this case involves the loans themselves, not the collateral. The Complaint makes no allegations regarding the collateral, just the loans. This is not so unusual a case that the parties' bargained-for forum selection clauses should be disregarded. The Court should transfer this case to the United States District Court for the Western District of Virginia as the most convenient forum and the one that best satisfies the interests of justice.

## IV. CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant their Motion and transfer this case to the United States District Court for the Western District of Virginia, the forum selected manifold times by the parties.

Dated: December 6, 2023

Respectfully submitted,

   /s/ R. Booth Goodwin II
R. Booth Goodwin II (WVSB #7165)
Carrie Goodwin Fenwick (WVSB #7164)
Goodwin & Goodwin, LLP
300 Summers Street, Suite 500
Charleston, West Virginia 25301
Telephone: (304) 346-9700
Facsimile: (304) 344-9692
E-mail: rbg@goodwingoodwin.com

        John C. Lynch (WVSB # 6627)
        Megan E. Burns (WVSB #13290)
        Troutman Pepper Hamilton Sanders LLP
        222 Central Park Avenue, Suite 2000
        Virginia Beach, Virginia 23462
        Telephone: (757) 687-7564
        Facsimile: (757) 687-1524
        E-mail: john.lynch@trotuman.com
        Email: megan.burns@troutman.com

        *Counsel for Defendant Carter Bank & Trust and Carter Bankshares, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

GREENBRIER HOTEL CORPORATION,
et al,

      Plaintiffs,

v.                                            Civil Action No. 5:23-cv-00731
                                             Honorable Frank W. Volk, Judge

CARTER BANK & TRUST, et al.,

      Defendants.

### CERTIFICATE OF SERVICE

    I, R. Booth Goodwin II, hereby certify that I served a true and correct copy of the foregoing **Memorandum in Support of Carter Bank's Motion to Transfer Venue to the Western District of Virginia** upon the following counsel of record on December 6, 2023, via the Court's CM/ECF system.

Michael W. Carey
Steven R. Ruby
Raymond S. Franks II
David R. Pogue
Carey, Douglas, Kessler, & Ruby, PLLC
707 Virginia Street, East
901 Chase Tower
Charleston, WV 25301
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
dpogue@cdkrlaw.com
*Counsel for Plaintiffs*

                                             /s/ R. Booth Goodwin II
                                             R. Booth Goodwin II (WVSB # 7165)